IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                              ) | Criminal Case No. 3:18-CR-00188-CHB |
| ) | |
| GREGORY A. BUSH            ) | |

**SENTENCING MEMORANDUM**

*ELECTRONICALLY FILED*

The United States of America, by counsel, files its memorandum in support of sentencing in this action. The United States does not plan to present any witnesses at the hearing. However, several victims in the case, including friends and family of M.S. and V.J., have requested the opportunity to deliver their victim impact statements to the Court at sentencing.

The United States agrees with the Guideline calculations in the Final Presentence Investigation Report, which include a total offense level of 43 and a Criminal History Category of II. DN 70 (Final Presentence Investigation Report) at ¶¶ 52 and 61. This results in a sentencing range of life imprisonment. It is the position of the United States that a term of life imprisonment followed by three consecutive ten-year terms of imprisonment for Counts 2, 4, and 6, respectively, is the appropriate sentence in this matter. Additionally, restitution should be ordered in the amount of $23,222.60 to pay for funeral costs.

**I. OFFENSE CONDUCT**

The defendant has been convicted of a racially motivated hate crime resulting in the death of M.S., in violation of 18 U.S.C. § 249(a)(1) (Count 1); the unlawful use and discharge of a firearm in connection with Count 1, in violation of 18 U.S.C. § 924(c)(1) & (j)(1) (Count 2); a

racially motivated hate crime resulting in the death of V.J., in violation of 18 U.S.C. § 249(a)(1) (Count 3); the unlawful use and discharge of a firearm in connection with Count 3, in violation of 18 U.S.C. § 924(c)(1) & (j)(1) (Count 4); a racially motivated hate crime involving an attempt to kill D.R., in violation of 18 U.S.C. § 249(a)(1) (Count 5); and the unlawful use and discharge of a firearm in connection with Count 5, in violation of 18 U.S.C. § 924(c)(1) (Count 6).

On October 24, 2018, the defendant drove to a grocery store in Jeffersontown, in Jefferson County, Kentucky, armed with a Smith & Wesson, model 411, .40-caliber pistol. The defendant walked into the store, passed several white patrons, and began to follow M.S., an African-American man who was shopping with his grandson. *See id.* at ¶ 13. The defendant followed M.S. for the length of an aisle, pulled the gun from his waistband, and then shot M.S. in the back of the head. *See id*. The defendant had no prior relationship with M.S. and chose to shoot M.S. because of M.S.'s race. As M.S. lay bleeding on the ground, the defendant shot him again, killing him. *See id*. The defendant then re-holstered his gun and calmly walked out of the store, passing several white patrons along the way. *See id.*

When the defendant reached the grocery store parking lot, he spotted V.J., an African-American woman. *See id.* at ¶ 14. The defendant walked straight up to V.J. and shot her several times in the head and body, killing her. *Id*. The defendant had no prior relationship with V.J. and chose to shoot V.J. because of V.J.'s race.

Seconds after the defendant shot V.J., the defendant encountered an African-American man, D.R., who was in lawful possession of a handgun. D.R. asked the defendant what was going on, and the defendant, without responding, began walking toward D.R., holding his gun. *See id.* at ¶¶ 15 and 19. D.R. fired at the defendant, and the defendant returned fire. *See id*. After about a minute, the defendant stopped shooting and walked away. The defendant had no prior

relationship with D.R. and chose to shoot at D.R. because of D.R.'s race. The defendant next encountered a white man, who was legally armed with a firearm. *See id*. at ¶¶ 17-18. The defendant told him, "Don't shoot me [and] I won't shoot you. Whites don't shoot whites." *See id*. at ¶ 18. Shortly thereafter, the defendant was taken into custody. While being transported, the defendant mentioned the name, "Dylann Roof," the man who shot and killed nine African American victims in Charleston, South Carolina, in 2015. The defendant also shouted "Dylann Roof" while in the interview room at the police station. *Id*. at ¶ 12.

Shortly before the defendant went to the grocery store, the defendant attempted to gain entry to a nearby church with a predominantly African-American congregation. *See id.* at ¶ 20. Approximately ten parishioners were inside, attending a midweek service. Armed with the same gun he used minutes later to shoot M.S. and V.J., the defendant yanked on the church's locked side doors, but was unable to open them. *See id.* The defendant tried to enter through the locked front doors, but again was unsuccessful. *See id.*

## II.  GUIDELINES CALCULATION

The United States concurs with the Guidelines calculation in the PSR, which sets forth a total offense level of 43. The defendant's total offense level would be 45, however, the Guidelines are capped at 43.

## III.  CRIMINAL HISTORY

The defendant has a criminal history score of three and a Criminal History Category of II.

## IV.  SENTENCING FACTORS

This Court must ultimately affix a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). Title 18, United States

Code, Section 3553(a) guides the Court regarding factors to consider when imposing a sentence. That section directs courts to consider the following:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed:

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; and

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    the kinds of sentences available;

    (4)    the kinds of sentence and the sentencing range established for--

        (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines
        . . .

    (5)    any pertinent policy statement--
        . . .

    (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7)    the need to provide restitution to any victims of the offense.

**A. Nature and Circumstances of the Offense and the Need for the Sentence Imposed to Reflect the Seriousness of the Offense**

The nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense justify a life sentence followed by 30 years of imprisonment. The defendant murdered two people, both of whom were pillars in their families and well-regarded in their communities. The defendant had no prior connection to them and no basis for personal animosity towards them. Rather, the defendant targeted M.S. and V.J. based on something they had no control over – their race. The defendant murdered M.S. and V.J. while they were engaging

4

in a mundane task everyone has to do – grocery shopping. His crime not only left a hole in the heart of two families, but it affected the extent to which everyone in our community feels safe, particularly African Americans.

Further, it is a miracle that V.J. and M.S. were the only innocent people killed by the defendant. The defendant engaged in a gunfight with D.R. in a parking lot in a busy retail area. The defendant shot M.S. while M.S. was standing next to his 12-year-old grandson. The defendant shot V.J. while she was standing less than a car's length away from several other people. Immediately prior to going to Kroger, the defendant attempted to access a predominantly African-American church, presumably with the intent of harming those inside. The defendant's crimes put numerous people at risk.

## B. The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant

The need for the sentence imposed to protect the public from further crimes of the defendant justifies a life sentence followed by 30 years of imprisonment. While the defendant's criminal history score is relatively low, it shows a history of disturbing violence. In January 2009, the defendant trapped his parents, both of whom were over 70 years old, in their home, preventing them from using the phone to call for help. *Id.* at ¶ 58. The defendant broke his father's jaw and lifted his mother off the ground, holding her by the neck. *Id.* Prior to this incident, he had fired a gun in the home to shoot his cellular phone, putting both his parents at risk. *Id.* Later that same year, the defendant assaulted a court deputy during a family court hearing. *Id.* at ¶ 59. Several domestic violence orders and emergency protective orders have also been entered against the defendant, dating as far back as 2000. *Id.* at ¶¶ 67-69. The defendant has also inflicted violence on himself. *Id.* at ¶ 74.

In this case, as in his past cases, the defendant's behavior was impacted by his mental health issues. While this provides some moral mitigation, in the absence of some change in his mental state, the defendant is highly likely to commit further acts of violence. The day of the shooting, the defendant's parents had filed a mental inquest warrant due to their concerns about the defendant's deteriorating mental health. *Id*. at ¶ 81. It should not be incumbent on the defendant's aged parents to be the last bastion protecting the community from the defendant. A life sentence followed by 30 years will ensure that the defendant, his parents, and the community, are adequately protected from further crimes of the defendant.

### C. The History and Characteristics of the Defendant and the Need to Provide the Defendant with Appropriate Medical Care

The history and characteristics of the defendant and the need to provide the defendant with appropriate medical care justify a life sentence followed by 30 years of imprisonment. The defendant was first diagnosed with mental health issues in his adolescence. *Id*. at ¶ 73. The defendant has been alternately diagnosed with Schizoaffective Disorder, Bipolar Disorder, and Paranoid Schizophrenia. *Id*. at ¶¶ 74-79. Since his initial diagnosis, he has been psychiatrically hospitalized four times. *Id*. at ¶ 74. The defendant has, at times, responded well to antipsychotic medication. *Id*. at ¶ 76. However, he has a "history of going off his antipsychotic medication either because he feels good and thinks he does not need it anymore or is unable to pay for it in combination of thinking he does not need it." *Id*. When the defendant is not being medicated, he is a danger to himself and others. A life sentence followed by 30 years of imprisonment would ensure the defendant's mental health is constantly monitored and the defendant is required to take antipsychotic medication.

## IV. STATUTORY PENALTIES FOR VIOLATING 18 U.S.C. § 924(j)(1)

Counts 2 and 4 of the Indictment charge the defendant with violating Title 18, United States Code, Sections 924(c)(1) and 924(j)(1). Section 924(c)(1)(A) provides:

> [A]ny person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

Section 924(c)(1)(D) further requires that no sentence imposed under Section 924(c) "shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence . . . during which the firearm was used, carried, or possessed." Section 924(j)(1) provides: "A person who, in the course of a violation of [Section 924(c)], causes the death of a person through the use of a firearm, shall . . . if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life[.]"

There is a circuit split between the Eleventh Circuit and the Second, Third, Fourth, Eighth, and Tenth Circuits on the issue of whether Section 924(j)(1) incorporates Section 924(c)(1)(A)'s requirement of consecutive sentences. The majority view is that Section 924(j)(1) requires that the sentence imposed for a conviction under that subsection be served consecutively to any other sentence. *See United States v. Nina*, 734 F. App'x 27, 36 (2nd Cir. 2018); *United States v. Berrios*, 676 F.3d 118, 140–144 (3d Cir. 2012); *United States v. Bran*, 776 F.3d 276, 282 (4th Cir. 2015); *United States v. Allen*, 247 F.3d 741, 769 (8th Cir. 2001); *United States v. Battle*, 289 F.3d 661, 666–69 (10th Cir. 2002). The minority view, adopted solely by the Eleventh Circuit, is that Section

7

924(j)(1) is a separate offense from Section 924(c)(1) and thus the requirement for consecutive sentences does not apply. *See United States v. Julian*, 633 F.3d 1250, 1253-57 (11th Cir. 2011). While *Julian* does not expressly address Section 924(c)(1)'s mandatory minimum, based on the Eleventh Circuit's reasoning, the mandatory minimum sentence of Section 924(c)(1) would not apply to violations of Section 924(j)(1). *See id.* The Sixth Circuit has thus far declined to take a side in this dispute. *See United States v. Wallace*, 772 Fed. Appx. 320 (Mem.), 321 (6th Cir. 2019).

The Circuit split on this issue has little practical effect in this case, as the defendant has already been sentenced in state court to a term of life imprisonment, and the defendant's Guideline range in federal court is life imprisonment. However, this issue is something the Court should consider in crafting its sentence. Even assuming the Eleventh Circuit's holding were correct and consecutive sentences were not mandatory for violations of Section 924(j)(1), they would be justified in a case like this one where the defendant discharged a firearm to murder two people and to attempt to murder a third person. Adding three ten-year consecutive sentences for Counts 2, 4, and 6, would fulfill the sentencing goals of imposing a sentence that reflects the seriousness of the offense and that avoids creating unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

## VI. CONCLUSION

For the reasons set forth herein, the United States respectfully requests that the Court apply the Sentencing Guidelines, follow the statutory directives set out in 18 U.S.C. § 3553(a) and § 924(c) and (j), and follow the government's recommendation, by imposing a life sentence plus 30 years of imprisonment.

Respectfully submitted,

| | |
|---|---|
| MICHAEL A. BENNETT | KRISTEN M. CLARKE |
| Acting United States Attorney | Assistant Attorney General |
| Western District of Kentucky | Civil Rights Division |
| | |
| */s/ Amanda E. Gregory* | */s/ Christopher J. Perras w/ permission* |
| By: Amanda Gregory | By: Christopher J. Perras |
| Assistant United States Attorney | Special Litigation Counsel |
| 717 West Broadway | 601 D Street, NW |
| Louisville, KY 40202 | Washington, DC 20004 |
| Tel. (502) 582-5016 | Tel. (202) 353-5939 |
| Fax: (502) 582-5067 | christopher.perras@usdoj.gov |
| amanda.gregory@usdoj.gov | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to defense counsel.

   s/ *Amanda E. Gregory*
Amanda E. Gregory
Assistant U.S. Attorney