```
1                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF KENTUCKY
2                        LOUISVILLE DIVISION

3
     UNITED STATES OF AMERICA,      )    Case No. 3:18-CR-188-CHB
4                                   )
            Plaintiff,              )
5                                   )
     v.                             )
6                                   )
     GREGORY A. BUSH                )
7                                   )    March 18, 2021
            Defendant.             )    Louisville, Kentucky
8

9                              *  *  *  *  *
                     TRANSCRIPT OF CHANGE OF PLEA
10              BEFORE HONORABLE CLARIA HORN BOOM
                     UNITED STATES DISTRICT JUDGE
11                             *  *  *  *  *

12   APPEARANCES:

13   For United States:        Amanda E. Gregory
                               Christopher J. Perras (via telephone)
14                             U.S. Attorney's Office
                               717 West Broadway
15                             Louisville, KY  40202

16   For Defendant:           Donald J. Meier
                               Aaron M. Dyke
17                             Western Kentucky Federal Community
                               Defender, Inc.
18                             629 Fourth Ave
                               Suite 200
19                             Louisville, KY  40202

20   [Defendant present.]

21

22                          Rebecca S. Boyd, RMR, CRR
                             Official Court Reporter
23                           232 U.S. Courthouse
                             Louisville, KY 40202
24                              (502) 625-3777

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```

1       (Begin proceedings in open court 1:10 p.m.)

2               THE COURT:  Thank you.  Madam clerk, can you please

3   call the next case?

4               DEPUTY CLERK:  We're here in the matter of United

5   States versus Gregory A. Bush, Case Number 3:18-CR-188, and we

6   are here for a change of plea hearing, Your Honor.

7               THE COURT:  Thank you.  Counsel, can you please state

8   your appearances for the record?  First for the United States.

9               MS. GREGORY:  Amanda Gregory, Your Honor, and would

10   you prefer us at the podium or at counsel table?

11               THE COURT:  You may remain at counsel table.  That's

12   perfectly fine.  And on behalf of Mr. Bush.

13               MS. GREGORY:  Don Meier and Aaron Dyke for Mr. Bush

14   who is seated between us.

15               THE COURT:  All right.  Good afternoon, and good

16   afternoon, Mr. Bush.

17               DEPUTY CLERK:  Excuse me.  Judge Boom.

18               THE COURT:  Yes.

19               DEPUTY CLERK:  We also have Assistant United States

20   Attorney Christopher Perras on the phone with us.

21               THE COURT:  All right.  Good afternoon, Mr. Perras.

22               MR. PERRAS:  Good afternoon, Your Honor.

23               THE COURT:  So we are here for a change of plea

24   hearing.  I do want to go over a couple of health and safety

25   measures before we get started with our hearing.

1    Everyone is required to wear a face mask unless you have a

2    speaking role as part of the hearing.  Your face mask must cover

3    both your nose and your mouth at all times.  I think there's

4    hand sanitizer available if anyone should need that.

5    And, of course, counsel, you've got the clear barriers

6    there, so please feel free to just remain seated where you are.

7    You don't have to get up and use the podium.  If you would like

8    to, you certainly may, but you can dispense with the typical

9    practice of standing or going to the podium, and you can remain

10   seated if you would prefer to do that, and that way, you sort of

11   remain there behind the clear barrier.

12   So, Mr. Meier, I'll also note I think we have a number of

13   visitors in the courtroom today, some of whom are

14   representatives and family members of the victims, so I just

15   want to say welcome to the Western -- United States District

16   Court for the Western District of Kentucky.

17   So, Mr. Meier, it's my understanding that your client wants

18   to enter an open plea, meaning there is no plea agreement, to

19   Counts 1, 2, 3, 4, 5, and 6 of the indictment; is that correct?

20        MR. MEIER:  It is correct, Judge.

21        THE COURT:  All right.  And am I also correct in that

22   it is what we call an open plea, and there's no written plea

23   agreement?

24        MR. MEIER:  That's correct as well.

25        THE COURT:  All right.  Mr. Bush, I've got some

```
 1    questions for you.  You're represented today by Mr. Meier; is
 2    that correct --
 3                THE DEFENDANT:  Yes.
 4                THE COURT:  -- and Mr. Dyke?
 5                THE DEFENDANT:  Yes, ma'am.
 6                THE COURT:  All right.  And is it your desire or
 7    intent to plead guilty to Counts 1, 2, 3, 4, 5, and 6?
 8                THE DEFENDANT:  Yes.
 9                THE COURT:  All right.  Has the United States
10    fulfilled its obligation to advise the victims or their
11    representatives of this hearing?
12                MS. GREGORY:  Yes, Your Honor.
13                THE COURT:  All right.  And has anyone requested to be
14    heard at our hearing today?
15                MS. GREGORY:  We have not received any such requests,
16    Your Honor.
17                THE COURT:  All right.  So unless there are any other
18    preliminary issues, we'll get started with our hearing.
19        Mr. Bush, before I can accept your guilty plea, I must make
20    a number of determinations.  I must satisfy myself that you're
21    competent to enter a plea of guilty; that your plea is freely
22    and voluntarily made; that you understand the charges that
23    you're pleading guilty to and the potential penalties, and that
24    there is a factual basis for your plea.
25        In order to do all those things, I have to ask you a bunch
```

1    of questions.  Some of the questions will be about the charges

2    and the potential penalties.  Some of them will be about your

3    understanding of entering into an open plea.  Some of the

4    questions will be about what it is that you did that makes you

5    guilty.

6         If, at any point, you don't understand one of my questions,

7    just ask me to rephrase it.  It's important that you understand

8    everything that's going on in the courtroom today, and, of

9    course, if I ask you a question, and you answer it, I'll assume

10   that you understood my question.  So if you have any questions,

11   just let me know.

12        And also if, at any time -- you've got both of your counsel

13   there with you.  If, at any time, you need to go off the record

14   and discuss something with them, just let me know as well, and

15   we'll make sure we accommodate that.  Does that sound fair?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Okay.  So the first right that you have to

18   waive in order to plead guilty is the right to remain silent.

19   Do you understand that you have a constitutional right to remain

20   silent and not incriminate yourself?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Do you wish to waive that right in order

23   to plead guilty?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  All right.  Then I'm going to ask our

1   clerk to administer an oath to you.

2       (Defendant sworn.)

3           THE COURT:  So, Mr. Bush, now, you have sworn an oath

4   to tell me the truth.  Do you understand that if you lie to me,

5   you could be subject to the additional penalties of perjury?

6           THE DEFENDANT:  I understand.  Yes.  Yes, Your Honor,

7   I understand.

8           THE COURT:  Okay.  So I'm going to ask you some

9   background questions right now.  What's your full name?

10          THE DEFENDANT:  Gregory Allen Bush.

11          THE COURT:  All right.  And where were you born?

12          THE DEFENDANT:  In Louisville, Kentucky.

13          THE COURT:  You're a citizen of the United States?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Are you able to read and write?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And where did you live, here in

18  Louisville, before you were incarcerated?

19          THE DEFENDANT:  Yes.

20          THE COURT:  How old are you?

21          THE DEFENDANT:  I'm 53.

22          THE COURT:  And how far did you go in school?

23          THE DEFENDANT:  A couple years of college.

24          THE COURT:  And where was that?

25          THE DEFENDANT:  I spent a year at U of L and a year at

```
 1    JCC, just -- and you might -- what are you --

 2              THE COURT:  Yeah.  Just -- just how far you went in

 3    school.

 4              THE DEFENDANT:  Oh, yeah.  Yeah.

 5              THE COURT:  Okay.  What was the last type of work you

 6    did?  Where did you work most recently?

 7              THE DEFENDANT:  I worked at Owens Corning.  It was

 8    a -- that was a warehouse job.

 9              THE COURT:  Okay.  Are you currently, right now, under

10    the influence of any kind of drugs or alcohol?

11              THE DEFENDANT:  No.

12              THE COURT:  What about prescription medicine?

13              THE DEFENDANT:  Yeah.  I'm taking some Risperdal and

14    Cogentin.

15              THE COURT:  And that is for?

16              THE DEFENDANT:  That is for psych -- psychiatric

17    medicine.

18              THE COURT:  Okay.  Anything other than your psychri --

19    psychiatric --

20              THE DEFENDANT:  I'm taking some blood pressure

21    medicine and a water pill.

22              THE COURT:  All right.  Tell me how those medicines

23    affect you.  Did they interfere with your ability to understand

24    what's going on in the courtroom today?

25              THE DEFENDANT:  No.  No.
```

1        THE COURT:  Okay.  Do they prevent you from being able

2   to concentrate or focus?

3        THE DEFENDANT:  Just a little bit, but I can -- I

4   understand most things.

5        THE COURT:  Okay.  How long have you been on those

6   medications?

7        THE DEFENDANT:  Since about 2000.

8        THE COURT:  Are you having trouble understanding

9   anything today?

10        THE DEFENDANT:  No.

11        THE COURT:  Okay.  Have you ever been treated for

12   addiction to drugs or alcohol?

13        THE DEFENDANT:  No.

14        THE COURT:  I understand I know you underwent a

15   competency exam, and I know you have some psychiatric issues.

16   What is your actual diagnosis?

17        THE DEFENDANT:  Schizoaffective disorder.

18        THE COURT:  Anything else?

19        THE DEFENDANT:  Maybe some bipolar.

20        THE COURT:  All right.  And is -- are your conditions

21   being appropriately treated or controlled with the medicine that

22   you're on right now?

23        THE DEFENDANT:  I would say so.

24        THE COURT:  Okay.  Have you ever been hospitalized for

25   your psychiatric condition?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And when was that?

3          THE DEFENDANT:  Well, just here recently, I went to

4    KCPC.  Is that -- or do you mean --

5          THE COURT:  Okay.  Tell me about that, and then before

6    that, did you ever have --

7          THE DEFENDANT:  Yeah.  I've been to -- I've been to

8    U of L Hospital before, and I've been to Central State a couple

9    times.

10          THE COURT:  All right.  Are you currently suffering

11    from any kind of physical illness that might make it difficult

12    for you to concentrate today or understand what's going on?

13          THE DEFENDANT:  No.

14          THE COURT:  And you said your psychiatric conditions

15    are being appropriately controlled with medicine at this time;

16    is that correct?

17          THE DEFENDANT:  That's -- that's correct, Your Honor.

18          THE COURT:  Okay.  And just tell me, what's the

19    purpose of this hearing?

20          THE DEFENDANT:  The purpose of this hearing is to --

21    just to plead to try to not really hurry things up, but to make

22    a better step towards understanding exactly what happened,

23    and -- and -- and I know we're trying to not get to the death

24    penalty or anywhere -- anything like that.

25          THE COURT:  Okay.  And you want to plead guilty today?

1          THE DEFENDANT:  Yeah.

2          THE COURT:  Okay.  Let me ask you, Mr. Meier:  Have

3    you had any problems communicating with your client, you know,

4    today or anytime in the past?

5          MR. MEIER:  Well, not recently, Judge.  We -- I've met

6    with him briefly today and yesterday in jail and a few weeks

7    before that in jail, and as the Court's aware, he was found

8    incompetent to stand trial early on.  This case has been going

9    on since late 2018.  And, certainly, he was clearly incompetent

10   to stand trial at those times, and there were issues of

11   communication, as there would be with anybody.

12       But since -- we are not contesting the findings of KCPC.

13   It's a night-and-day difference since he has been appropriately

14   treated, and we are not contesting nor do we believe that he is

15   incompetent at this point in time.

16          THE COURT:  All right.  Do you believe that he has

17   understood your legal advice, here most recently, since he has

18   been receiving treatment?

19          MR. MEIER:  Yes, ma'am.

20          THE COURT:  And that -- has he been able to

21   participate in the defense of his case?

22          MR. MEIER:  Yes, ma'am.

23          THE COURT:  All right.  Based upon the defendant's

24   answers to my questions and the representations of his counsel,

25   I find the defendant is competent to plead guilty to the charges

1    against him in the indictment.

2        So, Mr. Bush, I need to make sure that you understand your

3    constitutional rights, and the rights that you're giving up or

4    waiving by pleading guilty.

5        First, we're going to talk about your right to counsel.  Do

6    you understand that you have the right to assistance of counsel

7    at every stage in this case, even if you decided to go to trial,

8    and if you're unable to pay for counsel, counsel will be

9    provided for you at no cost, like the Federal Defender?  Do you

10   understand that?

11              THE DEFENDANT:  Yes.

12              THE COURT:  All right.  Do you understand that you

13   have the right to continue with a not-guilty plea, and you have

14   no obligation to plead guilty today unless that's what you want

15   to do?

16              THE DEFENDANT:  Yes.  I understand that.

17              THE COURT:  Let's talk about your right to a jury

18   trial.  Do you understand that you have the right to a trial by

19   a jury, and by pleading guilty today, you will be waiving your

20   right to a jury trial?  Do you understand?

21              THE DEFENDANT:  Yes.

22              THE COURT:  And do you understand if there was a jury

23   trial, you would be presumed innocent, and the burden would be

24   on the United States to prove you guilty beyond a reasonable

25   doubt before you could be convicted?  Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Also, you have the right to a speedy and a

3    public trial, and any conviction would have to be the unanimous

4    decision of all 12 jurors on the jury.  Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And, of course, by pleading guilty, you

7    would be giving up these rights.  Do you understand?

8          THE DEFENDANT:  Yes.  Yes, Your Honor.

9          THE COURT:  If there was a trial, your attorneys could

10   vigorously represent you.  They could cross-examine witnesses

11   called by the United States.  If there was a basis under the

12   rules, they could object to evidence presented by the United

13   States.  If there were witnesses to tell your side of the story,

14   they could subpoena them to testify at trial.  But by pleading

15   guilty, your lawyers will not be able to do those things on your

16   behalf, because there won't be a trial.  Do you understand that?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Also, if there was a trial, you would have

19   the right to testify if you chose to testify, and then the

20   opposite of that is true.  You would have the right not to

21   testify, and no one could force you to testify at your own

22   trial.  Are you aware of that?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  As I mentioned before, if you plead

25   guilty, you will also have to waive your right against

1   self-incrimination, because I'll ask you some questions a little

2   while later about your guilt.  Do you understand that?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  All right.  Mr. Meier, I know your client

5   has previously been convicted of a felony.  I believe he has

6   already pled and been sentenced in state court; is that right?

7            MR. MEIER:  That's correct, Judge.  He has pled to,

8   while slightly different charging documents, because -- because

9   of the differences in state and federal law, for the same

10  incident he has pled guilty in state court.

11           THE COURT:  So you understand that by pleading guilty

12  today, of course, these are felony charges, and I presume this

13  has already happened, but you will lose certain valuable civil

14  rights, such as the right to vote, the right to sit on a jury,

15  the right to possess a firearm.  Do you understand that?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  All right.  So let's talk about the

18  charges.  Have you received a copy of the indictment in this

19  case, and have you had enough time to go over it with your

20  lawyers?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Do you need any additional time right now

23  to go over the charges with your counsel?

24           THE DEFENDANT:  No.

25           THE COURT:  Have you been fully satisfied with the

1     advice and the counsel and the representation that you've

2     received from Mr. Meier and Mr. Dyke in this case?

3              THE DEFENDANT:  Yes.

4              THE COURT:  So I'm going to ask the United States to

5     describe the charges that you're pleading guilty to, the

6     potential penalties for those charges, and whether restitution

7     and forfeiture are issues.  So listen to the prosecutor's

8     description and make sure it matches your understanding of what

9     you're pleading guilty to.  Okay?

10             THE DEFENDANT:  Okay.

11             THE COURT:  All right.  You may proceed, Ms. Gregory.

12             MS. GREGORY:  Yes, Your Honor.  Count 1 charges the

13    defendant with violating Title 18 United States Code Section

14    249(a)(1)(b), and, specifically, with committing a hate crime

15    resulting in the death of victim MS on October 24th, 2018, in

16    Jefferson County.

17         Count 2 charges the defendant with violating Title 18 United

18    States Code Sections 924(c)(1)(a), (c)(1)(c), and (j)(1), and

19    related to Count 1, using and discharging a firearm to commit

20    murder during and in relation to a crime of violence on October

21    24th, 2018.

22         Count 3 charges the defendant with violating Title 18 United

23    States Code Section 249(a)(1)(b), and, specifically, committing

24    a hate crime resulting in death of victim VJ on October 24th,

25    2018, in Jefferson County, Kentucky.

1    Count 4 charges the defendant with violating Title 18 United

2  States Code Sections 924(c)(1)(a), (c)(1)(c), and (j)(1), and in

3  relation to Count 3 with using and discharging a firearm to

4  commit murder during and in relation to a crime of violence on

5  October 24th, 2018, in Jefferson County, Kentucky.

6    Count 5 charges the defendant with violating Title 18 United

7  States Code Section 249(a)(1)(b), and committing a hate crime

8  with attempt to kill victim DR on October 24th, 2018, in

9  Jefferson County, Kentucky.

10    And Count 6 charges the defendant with violating Title 18

11 United States Code Section 924(c)(1)(a) and (c)(1)(c) in

12 relation to Count 5, using and discharging a firearm during and

13 in relation to a crime of violence on October 24th, 2018 in

14 Jefferson County, Kentucky.

15    Forfeiture is an issue in this case.  We are seeking

16 forfeiture of the firearm, the Smith & Wesson Model 411

17 .40-caliber pistol Serial VDB3707.  Restitution is an issue.  We

18 will be seeking -- seeking $23,222.60 in restitution for funeral

19 expenses related to the two victims.

20    The maximum penalties in this case for Counts 1, 3, and 5,

21 each count is no more than life imprisonment, $250,000 fine or

22 both, and up to five years' supervised release.

23    Counts 2 and 4 at charging had the potential for the death

24 penalty, but as the Attorney General has made the decision that

25 the United States will not seek the death penalty at this time,

1    the maximum penalty is life imprisonment, a mandatory minimum of

2    10 years' imprisonment upon the finding of the discharge, a

3    mandatory minimum of 25 years for the second 924(c) convictions,

4    a $250,000 fine or both for each count, and no more than five

5    years' supervised release.

6         And for Count 6, no more than life imprisonment, a

7    mandanory -- mandatory minimum of 10 years of imprisonment upon

8    the finding of a discharge of the firearm, mandatory minimum of

9    25 years for a second 924(c) conviction or a $250,000 fine or

10   both, and no more than five years' supervised release.

11             THE COURT:  All right.  Thank you.  Mr. Meier, have

12   the charges and the potential penalties been accurately

13   described by the United States?

14             MR. MEIER:  They have, Judge.

15             THE COURT:  All right.  Mr. Bush, did you hear the

16   prosecutor's description of the charges that you're pleading

17   guilty to and the potential penalties for those charges?

18             THE DEFENDANT:  Yes.

19             THE COURT:  All right.  And does her description match

20   your understanding, and what you've been talking to your lawyers

21   about as the charges you're pleading guilty to and the potential

22   penalties?

23             THE DEFENDANT:  Yes.

24             THE COURT:  All right.  She mentioned restitution.

25   That is -- restitution is just being required to compensate

1   someone or return something that has been taken.  And so it

2   sounds like -- I don't know.  Is there an agreement on

3   restitution, Mr. Meier, or is that something that will be worked

4   out at a later time in advance of sentencing?

5          MR. MEIER:  Judge, I don't antic -- you know, mess --

6   as the Government has indicated, restitution is mandatory.  We

7   have been going back and forth in terms of a plea agreement.  We

8   don't have one in this case, but I don't anticipate that we will

9   be seriously challenging.  As long as we have documentation of

10  those expenses, which I anticipate they have, I don't think it

11  will be a major issue.  If -- certainly, if we have an issue, we

12  reserve the right to bring it up, but I don't anticipate that.

13         THE COURT:  Okay.  And the United States, Mr. Bush,

14  mentioned forfeiture of the weapon that was used in this case.

15  That means giving it up or forfeiting it as a penalty.  Do you

16  understand that?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  All right.  Also there is a mandatory

19  special assessment of $100 for each felony count of conviction

20  for a total of $600.  Do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Also I always cover this.  I'm not sure

23  that it applies here.  If you are on probation or parole in any

24  other court, by pleading guilty today, it likely violates the

25  terms of your probation or parole in the other court and could

1   subject you to additional penalties.  Do you understand that?

2           THE DEFENDANT:  Yes.

3           THE COURT:  All right.  Mr. Meier, are you satisfied

4   that your client understands the nature of the charges that he's

5   pleading guilty to, the potential penalties, and the issues with

6   respect to potential supervised release, forfeiture or rest --

7   and restitution?

8           MR. MEIER:  I believe he does, Judge.

9           THE COURT:  All right.  Then based on the defendant's

10  responses and the responses of his counsel, I find that the

11  defendant has had a sufficient opportunity to review the charges

12  against him in the indictment with his counsel, and that he

13  understands the charges and the potential penalties.

14      So we have talked that there is no written plea agreement in

15  this case.  Have there been offers by the United States for a

16  formal plea agreement, Mr. Meier?

17          MR. MEIER:  Judge, there have -- there have been

18  offers.  This case hinged, generally, on the imposition of the

19  death penalty, in general, and the corresponding state court

20  case.  There were negotiations in a global sense, and I think

21  Ms. Gregory is going to bring that up.

22      There is actually a condition in his state court plea, to

23  which he pled guilty but mentally ill to two counts of murder

24  and other offenses, and with the agreement that he would be

25  pleading guilty here in federal court.

1  In terms of what his sentence is, yes, I have a minimum of

2 ten years.  He's already received a sentence of life without

3 parole.  So it didn't seem necessary to necessarily have a

4 particular plea agreement in place as it, frankly, won't have

5 any practical effect on his incarceration.

6  THE COURT:  All right.  Have the plea offers been

7 conveyed to Mr. Bush?

8  MR. MEIER:  They have, Judge.  Yes.

9  THE COURT:  Is there any need for a Frye hearing?

10  MR. MEIER:  No.

11  THE COURT:  All right.  Mr. Bush, do you understand

12 that you are pleading guilty without any agreement with the

13 United States?

14  THE DEFENDANT:  Yes, ma'am.

15  THE COURT:  And do you understand that that means the

16 United States is free to argue for any sentence that they

17 believe is appropriate?  Of course, in this case, the Attorney

18 General has decided not to seek the death penalty, so that is

19 off the table, but, otherwise, the United States is free to

20 argue for any sentence that they believe is appropriate.  Do you

21 understand that?

22  THE DEFENDANT:  Yes, Your Honor.

23  THE COURT:  And, of course, your counsel, then, are

24 free to argue for whatever sentence they believe is appropriate

25 on your behalf.  Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And do you understand that if you receive

3    a sentence that is more severe than what you had anticipated,

4    you will not be able to withdraw your guilty plea?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  And, of course, you know, for instance,

7    you may have been talking with your counsel about what you think

8    your sentence might be in this case, but if your lawyer is

9    mistaken, and you receive a sentence that is more severe than

10   what you had anticipated, you still will not be able to withdraw

11   your guilty plea.  Do you understand that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Mr. Meier, have you discussed this process

14   with your client?

15         MR. MEIER:  I have, Judge, and we anticipate the

16   Government will be asking for life, which is without parole in

17   the federal system.  We discussed that with Mr. Bush, and that's

18   what we anticipate --

19         THE COURT:  Okay.

20         MR. MEIER:  -- happening.

21         THE COURT:  All right.  And you believe he understands

22   he would be unable to withdraw his guilty plea?

23         MR. MEIER:  Yes.

24         THE COURT:  All right.  So, typically, I would hold a

25   sealed bench conference to review any plea supplement.  I don't

```
 1    believe there is any need in this case, since there is no plea

 2    agreement at all.  Do you agree with that, Mr. Meier?

 3              MR. MEIER:  Yes, Judge.

 4              THE COURT:  All right.  Ms. Gregory.

 5              MS. GREGORY:  Yes, Your Honor, I do agree with that.

 6    I don't know if now would be a good time for me to just address

 7    the point that Mr. Meier made regarding the state plea

 8    agreement.

 9              THE COURT:  Certainly.

10              MS. GREGORY:  Okay.  So Mr. Bush has already pleaded

11    guilty and been sentenced at the state level, and at the state

12    level, he did have a written plea agreement, and that included a

13    provision that he would plead guilty to all federal charges in

14    this case in exchange for concurrent life without parole

15    sentences to be served in his state case.  So that -- the United

16    States isn't a party to that agreement, but that was a part of

17    the state plea agreement.

18              THE COURT:  All right.  Thank you.  So, Mr. Bush, I

19    have to also make sure that your plea today is voluntary.  Has

20    anyone threatened you or anyone close to you or forced you in

21    any way to plead guilty?

22              THE DEFENDANT:  No, Your Honor.

23              THE COURT:  Is it your choice to plead guilty?

24              THE DEFENDANT:  It's a communal choice, but yeah, it's

25    my choice.
```

1          THE COURT:  All right.  Have any promises been made to

2   you to get you to plead guilty --

3          THE DEFENDANT:  No.

4          THE COURT:  All right.  Based on the defendant's and

5   his counsel's responses to my questions, I find the defendant

6   understands the plea that he is entering into, the open plea,

7   and that the plea is voluntary.

8      So now I'm going to talk for just a few moments about some

9   of the factors that the Court will consider in determining what

10  your final sentence is.

11     While the sentencing guidelines, they are no longer binding

12  or mandatory on the Court, they do represent a starting place in

13  every case in determining the appropriate sentence, and that is

14  a sentence that is sufficient but not greater than necessary,

15  and so it's important that you understand how the guidelines

16  work.

17     They're based on two primary factors.  One is the offense

18  level for the crimes that you are pleading guilty to, and the

19  other is your criminal history.  Those two things combined

20  determine what your guideline range will be in this case.

21     I find out about your guideline range from the presentence

22  report that will be prepared by the probation office.  You'll

23  have an opportunity to review a draft of that presentence report

24  with your counsel, so will the United States.

25     Then if either side has objections to the presentence

1 report, you could file objections, and if there are objections,

2 I will rule on those at your sentencing hearing, and then I will

3 announce or rule on what your final guideline range will be.

4 But until that process takes place with your presentence report,

5 it's impossible to know today exactly what your guideline range

6 will be.  Do you understand that?

7 　　　　THE DEFENDANT:  Yes, Your Honor.

8 　　　　THE COURT:  I'll also, of course, consider any

9 mandatory maximums or minimums that have been set by Congress as

10 well as potential motions at the sentencing hearing.

11 　　And then the other thing I will consider are a number of

12 statutory factors.  Congress passed a sentencing statute, it's

13 18 USC 3553(a), and there's a number of factors that are listed

14 in that statute that I'm required to review and consider at

15 every sentencing hearing and try to individualize the sentence

16 to the particular crime and the particular defendant.

17 　　So it's important that you understand what those factors

18 are, and they are as follows:  The nature and circumstances of

19 the offense, and the history and characteristics of the

20 defendant; the need for the sentence imposed to reflect the

21 seriousness of the offense, to promote respect for the law, and

22 to provide just punishment; to afford adequate deterrence to

23 criminal conduct; to protect the public from further crimes of

24 the defendant, and to provide the defendant with needed

25 educational, vocational training, medical care or other

1   corrective treatment.

2       So have you talked generally with your counsel about the

3   role of the guidelines and then these 3553(a) factors that I'll

4   take into consideration?

5               THE DEFENDANT:  Yes, Your Honor.

6               THE COURT:  All right.  And then also do you

7   understand that parole has been abolished in the federal system,

8   and, certainly, if you're sentenced to a period of

9   incarceration, you will not be released on parole?  Do you

10  understand that?

11              THE DEFENDANT:  Yes, Your Honor.

12              THE COURT:  Mr. Meier, are you satisfied that your

13  client understands, generally, the role of the guidelines and

14  the statutory factors that the Court will consider in sentencing

15  him?

16              MR. MEIER:  Yes, ma'am.

17              THE COURT:  So, Mr. Bush, we've talked about the

18  rights you have to give up in order to plead guilty.  We've

19  talked about the potential penalties for the crimes that you're

20  pleading guilty to.  We've talked about the factors that the

21  Court will consider in determining your final sentence.  Do you

22  still wish to proceed with your guilty plea?

23              THE DEFENDANT:  Yes, Your Honor.

24              THE COURT:  All right.  Then I'm going to ask the

25  United States to summarize the facts and evidence that you

1    believe you could present at trial to prove each of the six

2    counts beyond a reasonable doubt.  Mr. Bush, please listen

3    carefully to the prosecutor's description of the facts and

4    evidence, 'cause I'll have some follow-up questions for you.

5    Okay?

6            THE DEFENDANT:  Okay.

7            THE COURT:  All right.  Ms. Gregory.

8            MS. GREGORY:  Yes, Your Honor.  If this case proceeded

9    to trial, the United States would prove, beyond a reasonable

10   doubt, through the use of surveillance video footage, testimony

11   of law enforcement wis -- witnesses, testimony of lay witnesses,

12   some statements from the defendant, that on or about October

13   24th, 2018, the defendant drove to a grocery store in

14   Jeffersontown in Jefferson County, Kentucky, in the Western

15   District of Kentucky, armed with a Smith & Wesson Model 411

16   .40-caliber pistol.

17       Defendant walked into the store, passed several white

18   patrons and began to follow MS, an African-American man who was

19   shopping with his grandson.  Defendant followed MS for the

20   length of an aisle, pulled the gun from his waistband and then

21   shot MS in the back of the head.  Defendant had no prior

22   relationship with MS and chose to shoot MS because of MS's race.

23       As MS laid bleeding on the ground, defendant shot him

24   several more times in the torso killing him.  Defendant then

25   reholstered his gun and calmly walked out of the store passing

several white patrons along the way.

When defendant reached the grocery store parking lot, he
spotted VG, an African-American woman, who was standing next to
several white individuals.  Defendant walked straight up to
VG -- or I'm sorry.  VJ and shot her several times in the head
and body killing her.  Defendant had no prior relationship with
VJ and chose to shoot VJ because of VJ's race.

Seconds after defendant shot VJ, defendant encountered an
African-American, DR, who was in lawful possession of a handgun.
DR asked defendant what was going on, and defendant, without
responding, began walking toward DR holding his gun.  DR fired
at defendant, and defendant returned fire.  After about a
minute, defendant stopped shooting and walked away.  Defendant
had no prior relationship with DR and chose to shoot at DR
because of DR's race.

Defendant next encountered a white man who was legally armed
with a firearm.  Defendant told him, "Don't shoot me, and I
won't shoot you.  Whites don't shoot whites."

Shortly thereafter, defendant was taken into custody.  While
being transported, defendant mentioned the name Dylann Roof, the
man who shoot and killed nine African-American victims in
Charleston, South Carolina, in 2015.

Shortly before defendant went into the grocery store,
defendant attempted to gain entry to a nearby church with a
predominantly African-American denomination.  Approximately 10

 1    parishioners were inside attending a midweek service.  Armed

 2    with the same gun he used minutes later to shoot MS and VJ,

 3    defendant yanked on the church's locked side doors but was

 4    unable to open them.  Defendant tried to enter through the

 5    locked front doors but was, again, unsuccessful.

 6            THE COURT:  Thank you.  Mr. Bush, did you hear the

 7    prosecutor's description of the facts and evidence that they

 8    would be able to produce at trial?

 9            THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  Is it true that you did all of the things

11    that the prosecutor said that you did?

12            THE DEFENDANT:  The fact that I passed a bunch of

13    black patrons is not really -- it was -- surprisingly, a lot of

14    African-Americans were there that night, and just the voices in

15    my head were telling me that there were -- you know, I was just

16    going to do something, but it was just like I did pick that it

17    was African-American, but I didn't shoot the man in the back of

18    the head.  I shot him in the back.

19        So the -- so the thing -- the facts just really aren't

20    straight, and then I shot him once again on the ground, and he

21    was with his grandson, and I was very upset, and I saw him

22    there, 'cause I didn't want a child to see something like that.

23        You know, people can -- and then as I walked out, there was

24    plenty of black people, and there was black people that's --

25    they were saying shut down the store.  So that kind of -- so I

1    kind of hurried up and got outside, and the -- there was a

2    lot -- like I said, a lot of African-Americans around.

3        And the one guy heard me -- heard the -- heard something say

4    Dylann Roof, so he -- I shot the woman when I believe he saw it,

5    and from then on, it was pretty much you got it okay, but as I

6    went to the church, I just tried one door and left, and --

7    because I was hearing these voices, and they were attacking me,

8    and they were trying to lead me into something that, you know, I

9    didn't want to do, but this is -- then we've gotten to the point

10   where I'm going to take all the blame, because I can -- there's

11   no way to explain exactly what -- why a person would do this,

12   other than being mentally ill.  So that's -- that's what I

13   wanted to say.

14           THE COURT:  But -- but you shot the gentleman, MS --

15           THE DEFENDANT:  Yeah.

16           THE COURT:  -- because he was African-American?

17           THE DEFENDANT:  Voices were telling me to -- to do

18   this.

19           THE COURT:  Because he was African-American?

20           THE DEFENDANT:  I don't know if it was because of

21   that, but I'm pleading guilty to a lot of things here, and I'm

22   just trying to, you know, understand it all, but I will say yes,

23   Your Honor.

24           THE COURT:  You shot the gentleman, MS, because he was

25   African-American?

1          THE DEFENDANT:  I would say yes, Your Honor.

2          THE COURT:  All right.  You shot the woman, VJ, in the

3     parking lot because she was African-American?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And you shot at DR in the parking lot

6     because he was African-American?

7          THE DEFENDANT:  Well, he drew on me first, and so I

8     had to -- had to shoot, but yes, Your Honor.

9          THE COURT:  You shot at DR --

10         THE DEFENDANT:  Yeah.

11         THE COURT:  -- because he was African-American?

12         THE DEFENDANT:  Well, he shot at me, but -- but, you

13    know, I could see the other two were probably, you know --

14         THE COURT:  I've got a real simple question.

15         THE DEFENDANT:  Yeah.

16         THE COURT:  Did you shoot at DR because he was

17    African-American?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Otherwise, do you agree with the factual

20    summary provided by the United States, the prosecutor in this

21    case?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Is it your intention to plead guilty to

24    Counts 1, 2, 3, 4, 5, and 6 because you are, in fact, guilty of

25    the crimes that you have gone over with your counsel, and you

1      heard described by the prosecutor?

2                  THE DEFENDANT:  Yes, Your Honor.

3                  THE COURT:  I find there is a factual basis for the

4      plea of guilty.

5          So, Mr. Bush, I'm now going to ask you to tell the Court how

6      you plead with respect to each of the counts against you.  So in

7      the case of the United States versus Gregory A. Bush, this is

8      Louisville Criminal Action 3:18-CR-188, how do you plead with

9      respect to Count 1?

10                 THE DEFENDANT:  Guilty, Your Honor.

11                 THE COURT:  How do you plead with respect to Count 2?

12                 THE DEFENDANT:  Guilty.

13                 THE COURT:  How do you plead with respect to Count 3?

14                 THE DEFENDANT:  Guilty.

15                 THE COURT:  How do you plead with respect to Count 4?

16                 THE DEFENDANT:  Guilty.

17                 THE COURT:  How do you plead with respect to Count 5?

18                 THE DEFENDANT:  Guilty.

19                 THE COURT:  How do you plead with respect to Count 6?

20                 THE DEFENDANT:  Guilty.

21                 THE COURT:  The Court has observed the demeanor of the

22      defendant, and I am satisfied with the representations and the

23      statements and the responses that he has given me, and I will

24      make the following findings:

25          It is the finding of this Court that in the case of the

1    United States versus Bush, Louisville Criminal Action

2    3:18-CR-188, that the defendant is fully competent and capable

3    of entering an informed plea.  Further, his plea of guilty is a

4    knowing and voluntary plea that is supported by an independent

5    basis in fact containing the essential elements of the offenses

6    that have been charged.

7        The plea, therefore, is accepted, and the defendant will be

8    adjudged guilty of the offenses that are charged in Counts 1, 2,

9    3, 4, 5, and 6 of the indictment.  This plea will be entered

10   into the record.

11       Counsel, before we set a date for the sentencing, are there

12   any issues with respect to the change of plea that we need to

13   cover?  Mr. Meier.

14              MR. MEIER:  Not from the defense, Judge.

15              THE COURT:  And let me just ask you, for purposes of

16   the record, do you believe that the factual basis for the

17   elements for each of the counts has been covered?

18              MR. MEIER:  Judge, I do, and we were negotiating, and

19   per the plea agreement, I think Mr. Bush just wants it to be

20   known that that's not his state of mind now that he's medicated.

21   That his state of mind was such that those facts are -- are

22   actually accurate.

23       We went over this at length, that he was, unfortunately,

24   seriously mentally ill at the time.  Insanity is an affirmative

25   defense.  He does not want to pursue that defense, and we're not

1     saying that it rises to the legal qualification for appreciating

2     the criminality of your conduct or being able to conform it to

3     the requirements of the law.

4         In this case, we're not saying that, but he just wanted the

5     Court to know that that's not the way he is feeling when he is

6     properly medicated and thinking in his right mind.

7               THE COURT:  All right.

8               MR. MEIER:  So yes, that's a long way of saying I

9     believe that the -- his plea is -- covers all the statutory

10    elements.

11              THE COURT:  All right.  Thank you.  Anything else that

12    you think we need to cover as part of the plea hearing, Mr.

13    Meier?

14              MR. MEIER:  No, ma'am.

15              THE COURT:  All right.  Ms. Gregory.

16              MS. GREGORY:  No, Your Honor.

17              THE COURT:  Okay.  Then I'm going to ask our courtroom

18    deputy to please provide a date for the sentencing in this case.

19              DEPUTY CLERK:  Yes, Your Honor.  I spoke to counsel

20    before today's hearing, and the parties have agreed upon June

21    24th at 1:00 o'clock.

22              THE COURT:  June 24th at 1:00 o'clock.  All right.

23    So, Mr. Bush, a written presentence report will be prepared by

24    the probation office to assist me in sentencing.  You will be

25    asked to provide information for that report.  It's up to you,

1    but I always suggest you have your counsel present when you meet

2    with US Probation.  They will likely think of things that are

3    important for that report that you might not think are

4    important.

5        Also, at your sentencing hearing, both victims and then, of

6    course, you will be given an opportunity to tell me -- make a

7    statement to the Court to tell me anything that you think is

8    important for me to understand or know about before determining

9    what your final sentence is going to be.

10       It's called your right of allocution.  It's a right I

11   respect a great deal.  You don't have to make a statement to the

12   Court, but if you would like to make a statement, you'll have my

13   undivided attention and as much time as you would like to take.

14   Okay?

15               THE DEFENDANT:  Okay, Your Honor.

16               THE COURT:  All right.  So what will happen now is

17   you'll be remanded back to the custody of the US Marshal, and

18   then I will enter a sentencing order for you to meet with

19   probation, and you'll get a draft of that presentence report to

20   review with your counsel, and then I'll see you back here on

21   June the 24th for your sentencing hearing.  Do you have any

22   other questions either for me or your counsel right now, Mr.

23   Bush?

24               THE DEFENDANT:  No, Your Honor.

25               THE COURT:  Okay.  Anything else we need to cover, Mr.

1    Meier?

2            MR. MEIER:  Not from the defense.  Thank you.

3            THE COURT:  All right.  Ms. Gregory.

4            MS. GREGORY:  No, Your Honor.  Thank you.

5            THE COURT:  Okay.  Thank you, and we'll be in recess.

6        (Proceedings concluded at 1:52 p.m.)

7

8                    C E R T I F I C A T E

9      I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

10   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

11

12

13   _____s/Rebecca S. Boyd_____        June 15, 2021
     Official Court Reporter                  Date

14

15

16

17

18

19

20

21

22

23

24

25